**UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| **ALFRED BOYD**, individually, and on behalf of all others similarly situated,<br>Plaintiffs,<br>v.<br>**COMPORIUM, INC.,**<br>Defendant. | Case No. 0:26-cv-00429-MGL |

**COLLECTIVE AND CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff Alfred Boyd, individually and on behalf of all others similarly situated (hereinafter, "Plaintiff"), by and through his attorneys, hereby brings this First Collective and Class Action Complaint against Comporium, Inc. ("Defendant"), and states as follows:

## INTRODUCTION

1. This is a collective action that arises out of Defendant's systemic failure to compensate its employees for all hours worked, including overtime hours worked at the appropriate overtime rate, in willful violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*., The North Carolina Wage and Hour Act, N.C.G.S. §§ 95-25.1, *et seq.* ("NCWHA"), and common law.

2. Plaintiff and the putative collective members consist of current and former business service representatives, customer service representatives, or similar positions, who were compensated on an hourly basis, ("Representatives"). Throughout the relevant period, Defendant maintained a corporate policy and practice of failing to compensate its Representatives for all pre- and post-shift off-the-clock work.

3. Regardless of the specific job title, all Representatives: (1) are paid on an hourly

basis; (2) are classified as non-exempt employees; (3) use the same timekeeping system(s); (4) use many (if not all) of the same computer programs; (5) are subject to the same relevant timekeeping and attendance policies; and (6) have the primary job duty of providing assistance to Defendant's customers.

4. Defendant required its Representatives to begin work prior to their scheduled shifts and perform a number of off-the-clock tasks that were integral and indispensable to their jobs, including booting up computers, logging into numerous software programs, and logging into phones. The Representatives only "clocked in" and received compensation *after* this preliminary work was completed, though they were required to perform this work to be "phone ready" when their scheduled shifts began.

5. A Representative's failure to be ready and able to take calls when the scheduled shift began would result in disciplinary action.

6. The Representatives routinely worked 40 hours or more per week before accounting for their off-the-clock work. When the off-the-clock work is included, the Representatives, even those Representatives who were scheduled and paid for only 40 hours per week, worked over 40 hours per week without the required overtime premium for all time worked over 40 hours.

7. Defendant, through its managers, had actual and constructive knowledge that its Representatives were completing this off-the-clock work without compensation. Nevertheless, Defendant suffered or permitted, and in fact trained and required, its Representatives to complete this unpaid work.

8. The U.S. Department of Labor recognizes that call center jobs, like those held by Defendant's Representatives, are homogenous and it issued Fact Sheet #64 in July 2008 to alert call center employees to some of the abuses which are prevalent in the industry. One of those

abuses, which is occurring in this case, is Defendant's refusal to pay for work "from the beginning of the first principal activity of the workday to the end of the last principal activity of the workday." *See* DOL Fact Sheet #64: Call Centers under the Fair Labor Standards Act (FLSA), (July 2008), *https://www.dol.gov/agencies/whd/fact-sheets/64-flsa-call-centers*.

9. The Department of Labor's Fact Sheet #64 specifically condemns an employer's non-payment of an employee's necessary pre-shift activities: "An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications, and work-related emails." *Id*. Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities must be kept." *Id*.

10. Defendant's practice of failing to compensate its Representatives for all hours worked violated the Representatives' rights under the FLSA.

11. Plaintiff brings this action for violation of the FLSA as a collective action, pursuant to Section 216(b) of the FLSA, on behalf of the following Collective:

> ***All current and former hourly business service representatives, customer service representatives, or similar positions, who worked for Defendant at any time during the past three years.***

12. Defendant is liable for its failure to pay its Representatives for all work performed, and at the appropriate overtime rate for hours worked in excess of 40 per week.

13. Representatives who elect to participate in this FLSA collective action seek compensation for all off-the-clock pre-shift work performed for Defendant, an equal amount for liquidated damages, prejudgment interest, and attorneys' fees and costs, pursuant to 29 U.S.C. § 216(b).

## JURISDICTION AND VENUE

14. This Court has subject matter jurisdiction over Plaintiff's FLSA claim pursuant to 28 U.S.C. § 1331 because Plaintiff's claims raise a federal question under 29 U.S.C. § 201, *et seq*.

15. Additionally, this Court has jurisdiction over Plaintiff's FLSA claim pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer … in any Federal or State court of competent jurisdiction."

16. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

17. Defendant's annual sales exceed $500,000, and Defendant has more than two employees; thus, the FLSA applies in this case on an enterprise basis. Defendant's employees, including Plaintiff and the Representatives, engage in interstate commerce or in the production of goods for commerce and are therefore also covered by the FLSA on an individual basis.

18. The Court has general personal jurisdiction over Defendant because Defendant conducts business within this District and maintains its principal place of business in this District.

19. Venue is proper in this District pursuant to 28 U.S.C. §1391(b) and (c) because the Defendant conducts business in this District, and a substantial portion of the events that give rise to the Plaintiff's claims occurred in this District.

## PARTIES

20. Plaintiff Alfred Boyd is a current Houston, Texas resident. When he worked for Defendant from approximately 2020 through the end of his employment in 2023, Plaintiff was a resident of Concord, North Carolina. Plaintiff worked for Defendant as a Call Services Representative from approximately July 2015 to February 2018, when he became a Business Service Representative. He worked for Defendant as a Business Service Representative until June

2023.

21. Defendant compensated Plaintiff for his services as a Representative in the form of an hourly wage, most recently at the rate of $24.74 per hour. Plaintiff signed a consent form to join this collective action lawsuit. (**Exhibit A**).

22. Defendant Comporium is a phone, internet, and cable provider.

23. Defendant is a South Carolina corporation with its corporate headquarters located at 332 East Black Street, Rock Hill, South Carolina 29730.

24. Defendant's registered agent is Corporation Service Company located at 100 Coastal Dr., Ste. 210, Charleston, SC 29492.

## GENERAL ALLEGATIONS

25. Defendant employed hundreds of Representatives – including Plaintiff – within the past three years and across the United States to assist its customers with their customer service needs.

26. Defendant compensated its Representatives on an hourly basis and classified them as non-exempt employees under the FLSA.

27. Upon information and belief, Defendant maintains documents that demonstrate the promised hourly wage for each Representative, including but not limited to: offer letters, paystubs, and/or other payroll records.

28. Plaintiff Boyd's typical schedule was 8:00 a.m. to 5:00 p.m., Monday through Friday, with a one-hour unpaid lunch period. As such, Plaintiff Boyd's standard schedule was to work 40 hours per week. Consequently, when Plaintiff Boyd worked his standard schedule, he routinely worked more than 40 hours per week due to his off-the-clock work and thus incurred overtime.

29. Similarly, Defendant's Representatives are typically scheduled to work at least eight hours per day, five days per week, for up to 40 or more hours in a workweek. If Representatives strictly follow Defendant's standard schedule, they routinely work more than 40 hours per week due to their off-the-clock work and thus incur overtime.

30. Throughout their employment with Defendant, Plaintiff and the other Representatives' job duties included fielding inbound calls and performing a wide range of support services to those callers with questions.

31. Once hired, Defendant provided all Representatives with training on, *inter alia*, how to carry out their day-to-day job duties, including how to load and log into their computer programs at the beginning of the day, and how to log out at the end of the day; how to track their time; the importance of attendance and schedule expectations; and Defendant's policies related to each topic. The training Defendant's Representatives receive is substantially, if not entirely, the same and all Representatives are subject to the same disciplinary policies.

32. Defendant trained all Representatives using standardized procedures and required them to comply with strict attendance and schedule-adherence policies.

**Pre-Shift Off-the-Clock Work**

33. Representatives were required to be fully logged into Defendant's computer network, customer systems, and phone systems and ready to take calls at the exact start of their scheduled shifts.

34. To meet this requirement, Representatives were required to perform pre-shift boot-up and login activities before clocking into Defendant's timekeeping system.

35. All of Defendant's Representatives use the same or similar computer networks, software, programs, and applications in the course of performing their job responsibilities. These

programs and applications are an integral and indispensable part of the Representative's work, and they cannot perform their jobs without them.

36. The pre-shift boot-up and login process consisted of the following steps:

a. The Representatives turned on or woke up their computer;

b. The Representatives then opened a VPN application and logged in using a username and password;

c. The Representatives then opened Defendant's Accesspoint system;

d. The Representatives then logged into the customer account system;

e. The Representatives then logged in to Defendant's phone system;

f. The Representatives then opened Microsoft Teams software;

g. The Representatives then opened their email and internet browser;

h. Once all applications to be "phone ready" were opened, the Representatives would then open the timekeeping application and their time clock would start.

37. The pre-shift work activities described above took substantial time on a daily basis, ranging from five to ten minutes per shift, or more, depending on how fast/slow the computers and programs were operating.

38. Representatives who failed to complete this work before their scheduled shifts were subject to discipline for tardiness.

39. The pre-shift off-the-clock time Plaintiff and all other Representatives spend booting up and logging in directly benefits Defendant and is integral and indispensable to the Representatives' job responsibilities.

**Post-Shift Off-the-Clock Work**

40. Pursuant to Defendant's policies, training, and direction, Plaintiff and all other Representatives are required to "clock out" of Defendant's timekeeping system before closing all work applications and systems to make certain they are "clocked out" the moment they stop

fielding calls.

41. The off-the-clock post-shift process takes substantial time on a daily basis, with said time ranging from three to five minutes per shift.

42. Defendant's Representatives are not paid for their post-shift off-the-clock work.

43. The post-shift off-the-clock work Plaintiff and other Representatives perform is compensable, directly benefits Defendant, and the tasks undertaken in connection with the off-the-clock work are integral and indispensable to their job duties and responsibilities as Representatives.

44. Despite knowing Plaintiff and all other Representatives perform this pre- and post-shift work, Defendant and its managers failed to make any effort to stop or disallow it and instead suffered and permitted it to happen.

45. Defendant possesses, controls, and/or has access to information and electronic data indicating the times Plaintiff and all other Representatives boot up and log into their computers each day, along with the time they log into their telephone systems, and the time they shut down each day.

46. Because Defendant required its Representatives to perform pre- and post-shift work off-the-clock, the hours tracked in Defendant's timekeeping system are inaccurate representations of the total amount of time Representatives spend working for Defendant. Thus, the hours reflected on the Representatives' paystubs are also inaccurate representations of the hours they worked.

47. Plaintiff completed these pre- and post-shift work activities before and after every shift. Consequently, Plaintiff's uncompensated pre- and post-shift work constituted overtime work every week he worked his standard work schedule as described above.

48. Because Plaintiff and the other Representatives typically worked scheduled shifts

of at least 40 hours per week, their required pre- and post-shift work was nearly always overtime work, compensable at 1.5 times their regular rate of pay.

**Defendant Benefitted from the Uncompensated Off-the-Clock Work**

49. At all relevant times, Defendant required and directly benefited from the off-the-clock work performed by Plaintiff and all other Representatives in connection with the pre- and post-shift activities described above.

50. At all relevant times, Defendant controlled the work schedules, duties, protocols, applications, assignments, and employment conditions of Plaintiff and all other Representatives.

51. At all relevant times, Defendant was able to track the amount of time Plaintiff and all other Representatives spend in connection with pre-shift activities; however, Defendant failed to do so and failed to compensate Plaintiff and all other Representatives for the off-the-clock work they performed.

52. At all relevant times, Defendant used its attendance and adherence policies against Plaintiff and the other Representatives in order to pressure them into performing pre- and post-shift work off-the-clock.

53. Because Plaintiff and all other Representatives typically worked 40 hours or more in a workweek, Defendant's policies and practices also deprived them of overtime pay.

54. Defendant is in possession of the payroll and timekeeping records that will illustrate exactly which weeks Plaintiff and the Representatives worked over 40 hours and exactly which weeks they worked under 40 hours.

55. Defendant knew or should have known that the time spent by Plaintiff and other Representatives in connection with the off-the-clock pre-shift activities is compensable under the law. Indeed, in light of the explicit DOL guidance cited above, there is no conceivable way for

Defendant to establish that they acted in good faith.

56. Despite knowing Representatives performed off-the-clock work before, during, and after their shifts, Defendant failed to make any effort to stop or disallow the off-the-clock work and instead suffered and permitted it to happen.

## FLSA COLLECTIVE ACTION ALLEGATIONS

57. Plaintiff brings this action pursuant to 29 U.S.C. § 216(b) of the FLSA on behalf of himself and on behalf of:

> ***All current and former hourly business service representatives, customer service representatives, or similar positions, who worked for Defendant at any time during the past three years.***

(hereinafter referred to as the "FLSA Collective"). Plaintiff reserves the right to amend this definition if necessary.

58. Defendant is liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiff and other similarly situated Representatives.

59. Consistent with Defendant's policy and pattern or practice, Plaintiff and the members of the FLSA Collective are not paid the full premium overtime compensation they are due when they work beyond forty (40) hours in a workweek and are not paid any overtime in workweeks where their time cards reflect that they work slightly less than forty (40) hours, such as thirty-eight (38) to forty (40) hours, but actually work in excess of forty (40) hours, for which they are due both overtime gap time and overtime.

60. Defendant assigns and/or is aware of all the work that Plaintiff and the members of the FLSA Collective perform.

61. Upon information and belief, Defendant utilizes a centralized payroll system which calculates overtime pay for all similarly situated employees in the same or similar manner.

62. As part of its regular business practices, Defendant intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiff and the members of the FLSA Collective. This policy and pattern or practice includes, but is not limited to:

a. Willfully failing to pay its employees, including Plaintiff and the members of the FLSA Collective, premium overtime wages for hours worked in excess of forty (40) hours per workweek;

b. Willfully failing to pay overtime gap time for those unpaid hours under 40 associated with unpaid overtime;

c. Willfully failing to record all of the time that their employees, including Plaintiff and the members of the FLSA Collective, worked for the benefit of Defendant; and

d. Willfully failing to pay its employees, including Plaintiff and the members of the FLSA Collective, for off-the-clock work, including the pre-shift boot-up, and post-shift shutdown process.

63. Defendant is aware or should be aware that federal law requires it to pay Plaintiff and the members of the FLSA Collective overtime premiums (computed at their regular rate of pay) for hours worked in excess of 40 per workweek.

64. Defendant's unlawful conduct has been and continues to be widespread, repeated, and consistent.

65. A collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiff under 29 U.S.C. § 216(b). The employees on behalf of whom Plaintiff bring this collective action are similarly situated because (a) they have been or are employed in the same or similar positions; (b) they were or are performing the same or similar job duties; (c) they were or are subject to the same or similar unlawful practices, policy, or plan; and (d) their claims are based upon the same factual and legal theories.

66. The employment relationships between Defendant and every proposed FLSA

Collective member are the same and differ only by name, location, and rate of pay. The key issue – the amount of uncompensated pre- and post-shift off-the-clock work – does not vary substantially among the proposed FLSA Collective members.

67. There are many similarly situated current and former Representatives who have been underpaid in violation of the FLSA. They would benefit from the issuance of a court-authorized notice of this lawsuit and the opportunity to join.

68. Plaintiff estimates the FLSA Collective, including both current and former Representatives over the relevant time period, includes hundreds of members. The precise number should be readily available from a review of Defendant's personnel and payroll records.

69. All of the estimations discussed herein will be refined after collective discovery is completed.

**RULES 23 NATIONWIDE CLASS ACTION ALLEGATIONS**

70. Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on behalf of himself and on behalf of:

> ***All current and former hourly business service representatives, customer service representatives, or similar positions, who worked or have worked for Defendant at any time during the applicable statutory period.***

("Rule 23 Nationwide Class"). Plaintiff reserves the right to amend this definition if necessary

71. The members of the Rule 23 Nationwide Class are so numerous that joinder of all Rule 23 Nationwide Class members in this case would be impractical. Plaintiff reasonably estimates there are hundreds of Rule 23 Nationwide Class members. Rule 23 Nationwide Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

72. There is a well-defined community of interests among Rule 23 Nationwide Class members and common questions of law and fact predominate in this action over any questions

affecting individual members of the Rule 23 Nationwide Class. These common legal and factual questions, include, but are not limited to, the following:

a. Whether the pre-shift time Rule 23 Nationwide Class members spend on startup and login activities each shift is compensable;

b. Whether the post-shift time Rule 23 Nationwide Class members spend on shutdown activities each shift is compensable;

c. Whether Defendant's non-payment of wages for all compensable time amounted to a breach of contract; and

d. Whether Defendant's non-payment of wages for all compensable time resulted in an unjust enrichment to Defendant.

73. Plaintiff's claims are typical of those of the Rule 23 Nationwide Class in that she and all other Rule 23 Nationwide Class members suffered damages as a direct and proximate result of the Defendant's common and systemic payroll policies and practices. Plaintiff's claims arise from the same pay policies, practices, promises and course of conduct as all other Rule 23 Nationwide Class members' claims and her legal theories are based on the same legal theories as all other Rule 23 Nationwide Class members.

74. Plaintiff will fully and adequately protect the interests of the Rule 23 Nationwide Class and Plaintiff has retained counsel who are qualified and experienced in the prosecution of wage and hour class actions. Neither Plaintiff nor her counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Nationwide Class.

75. A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 Nationwide Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer.

76. This case will be manageable as a Rule 23 Class action. Plaintiff and Plaintiff's counsel know of no unusual difficulties in this case and Defendant has advanced networked

computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

77. Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

78. Because Defendant has acted and refused to act on grounds that apply generally to the Rule 23 Nationwide Class and declaratory relief is appropriate in this case with respect to the Rule 23 Nationwide Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

**RULES 23 NORTH CAROLINA CLASS ACTION ALLEGATIONS**

79. Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on behalf of himself and on behalf of:

> ***All current and former hourly business service representatives, customer service representatives, or similar positions, who worked or have worked for Defendant in North Carolina at any time during the applicable statutory period.***

("Rule 23 North Carolina Class"). Plaintiff reserves the right to amend this definition if necessary.

80. The members of the Rule 23 North Carolina Class are so numerous that joinder of all Rule 23 North Carolina Class members in this case would be impractical. Plaintiff reasonably estimates there are dozens, if not hundreds, of Rule 23 North Carolina Class members. Rule 23 North Carolina Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

81. There is a well-defined community of interests among Rule 23 North Carolina Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 North Carolina Class. These common legal

and factual questions, include, but are not limited to, the following:

a. Whether the pre-shift time Rule 23 North Carolina Class members spend on startup and login activities each shift is compensable;

b. Whether the post-shift time Rule 23 North Carolina Class members spend on shutdown activities each shift is compensable; and

c. Whether Defendant's failure to pay the Rule 23 North Carolina Class members for this pre-, and post-shift work resulted in a violation of the NCWHA's requirement to pay employees all promised wages and the promised rates.

82. Plaintiff's claims are typical of those of the Rule 23 North Carolina Class in that Plaintiff and all other Rule 23 North Carolina Class members suffered damages as a direct and proximate result of the Defendant's common and systemic payroll policies and practices. Plaintiff's claims arise from the same pay policies, practices, promises and course of conduct as all other Rule 23 North Carolina Class members' claims and her legal theories are based on the same legal theories as all other Rule 23 North Carolina Class members.

83. Plaintiff will fully and adequately protect the interests of the Rule 23 North Carolina Class and Plaintiff has retained counsel who are qualified and experienced in the prosecution of wage and hour class actions. Neither Plaintiff nor Plaintiff's counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 North Carolina Class.

84. A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 North Carolina Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer.

85. This case will be manageable as a Rule 23 Class action. Plaintiff and Plaintiff's counsel know of no unusual difficulties in this case and Defendant has advanced networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

86. Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

87. Because Defendant has acted and refused to act on grounds that apply generally to the Rule 23 North Carolina Class and declaratory relief is appropriate in this case with respect to the Rule 23 North Carolina Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

**COUNT I**
**VIOLATIONS OF THE FAIR LABOR STANDARDS ACT, 29 U.S.C. § 201, *et seq.* – FAILURE TO PAY OVERTIME**

88. Plaintiff re-alleges and incorporates all previous paragraphs herein.

89. At all times relevant to this action, Defendant was an employer under 29 U.S.C. § 203(d) of the FLSA, subject to the provisions of 29 U.S.C. § 201, *et seq*.

90. Defendant is engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA.

91. At all times relevant to this action, Plaintiff and the proposed Collective members were "employees" of Defendant within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

92. Plaintiff and the proposed Collective members, by virtue of their job duties and activities actually performed, are all non-exempt employees and were classified as such.

93. Plaintiff and the proposed Collective members were either: (1) engaged in commerce; (2) engaged in the production of goods for commerce; or (3) employed in an enterprise engaged in commerce or in the production of goods for commerce.

94. At all times relevant to this action, Defendant "suffered or permitted" Plaintiff and proposed Collective members to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

95. At all times relevant to this action, Defendant required Plaintiff and the proposed Collective members to regularly perform five to ten minutes or more of pre-shift computer boot-up and login time, and three to five minutes of post-shift shutdown time, but failed to pay these employees the federally mandated overtime compensation for all services performed.

96. All of the off-the-clock work performed by Plaintiff and the proposed Collective members could have easily been tracked and recorded by Defendant but was not.

97. In the aggregate, the amount of Plaintiff's and the proposed Collective members' uncompensated time amounted to hours of uncompensated time per week and, over the three-year statutory period, was not *de minimis*.

98. In workweeks where Plaintiff and the proposed Collective members worked 40 hours or more, the uncompensated pre- and post-shift off-the-clock work should have been paid at the federally mandated rate of 1.5 times each employee's regularly rate of pay. 29 U.S.C. § 207.

99. Defendant's violations of the FLSA were knowing and willful. Defendant knew or could have easily determined how much time Representatives spent working off-the-clock to complete pre-shift activities, and Defendant could have properly compensated Plaintiff and the proposed Collective members for the boot-up and login work they performed, but did not.

100. The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, Plaintiff and the proposed Collective members are entitled to their unpaid overtime, plus an additional equal amount in liquidated (double) damages, plus costs and reasonable attorneys' fees.

**COUNT II**
**(On Behalf of the Rule 23 Nationwide Class)**
**BREACH OF CONTRACT**

101. Plaintiff re-alleges and incorporates all previous paragraphs herein.

102. Defendant had binding and valid contracts with Plaintiff and the Rule 23 Nationwide Class to pay for each hour worked at a pre-established (contractual) regular hourly rate in consideration of the work duties Plaintiff and the Rule 23 Nationwide Class performed on behalf of Defendant.

103. For example, Defendant offered to compensate Plaintiff at a minimum of $24.74 per hour if Plaintiff agreed to perform services for Defendant as a Business Service Representative. Plaintiff accepted Defendant's offer and performed under the contract by fulfilling his duties as a Representative.

104. Plaintiff and the Rule 23 Nationwide Class accepted the terms of Defendant's contractual promises and performed under the contract by doing the job and carrying out the work performed each shift including the unpaid off-the-clock work that was required in connection with pre- and post-shift work activities, described herein.

105. By not paying Plaintiff and the Rule 23 Nationwide Class the agreed upon hourly wage for the off-the-clock work performed, Defendant breached its contracts with Plaintiff and the Rule 23 Nationwide Class.

106. Plaintiff and the Rule 23 Nationwide Classes remedies under the FLSA are inadequate in this case to the extent Defendant paid Plaintiff and the Rule 23 Nationwide Class more than the federally mandated minimum wage of $7.25 per hour, but less than forty (40) hours per week (i.e., a pure "gap time" claim).

107. Defendant also breached its duty of good faith and fair dealing by failing to keep track of the time Plaintiff and the Rule 23 Nationwide Class spent performing off-the-clock activities.

108. As a direct and proximate result of Defendant's contractual breach, Plaintiff and the Rule 23 Nationwide Class were damaged in an amount to be determined at trial.

**COUNT III**
**(On Behalf of the Rule 23 Nationwide Class)**
**UNJUST ENRICHMENT**

109. Plaintiff re-alleges and incorporates all previous paragraphs herein.

110. The Count is pled in the alternative to Count II *supra*, pursuant to Fed. R. Civ. P. 8(d)(2)-(3).

111. At all times relevant to this action, Defendant promised Plaintiff and every other Rule 23 Nationwide Class member a pre-established regular hourly rate in consideration of the work duties Plaintiff and the Rule 23 Nationwide Class members performed for the benefit of Defendant.

112. Plaintiff and every other Rule 23 Nationwide Class member relied upon Defendant's promise for the pre-established regular hourly rate and performed by doing their jobs and carrying out their required work duties.

113. By not paying Plaintiff and every other Rule 23 Nationwide Class member the agreed upon hourly wage for the off-the-clock work they performed each shift, Defendant was unjustly enriched.

114. Plaintiff and the Rule 23 Nationwide Class members performed off-the-clock work tasks at the request of and without objection by Defendant.

115. Defendant received and accepted the above-referenced off-the-clock work services from Plaintiff and every other Rule 23 Nationwide Class member and enjoyed the benefits derived therefrom.

116. Defendant has been unjustly enriched by the retention of monies received pursuant to the services Plaintiff and the Rule 23 Nationwide Class performed for Defendant's benefit, without having compensated Plaintiff and the Rule 23 Nationwide Class for the same.

117. Plaintiff and the Rule 23 Nationwide Class suffered detriment due to Defendant's failure to compensate them for the off-the-clock work described herein, in that Plaintiff and the Rule 23 Nationwide Class were deprived of the ability to utilize that time, effort and their resources in a profitable manner.

118. As a direct and proximate result of Defendant's actions, Plaintiff and every other Rule 23 Nationwide Class member suffered damages, including but not limited to, loss of wages.

**COUNT IV**
**(Rule 23 North Carolina Class Action)**
**VIOLATIONS OF NORTH CAROLINA WAGE AND HOUR ACT**
**N.C.G.S. §§ 95-25.1, *et seq.* ("NCWHA")**

119. Plaintiff re-alleges and incorporates all previous paragraphs herein.

120. At all times relevant to the action, Defendant was an employer covered by the mandates of the NCWHA, and Plaintiff and the Rule 23 North Carolina Class were employees entitled to the NCWHA's protections.

121. Pursuant to the NCWHA, "[e]very employer shall pay every employee all wages and tips accruing to the employee on the regular payday." N.C.G.S. § 95-25.6.

122. At all relevant times, Defendant, pursuant to its policies and practices, failed and refused to pay Plaintiff and the North Carolina Class all owed, earned, and promised wages on their regular paydays.

123. In particular, Defendant, in violation of N.C.G.S. § 95-25.6, failed to pay all straight time wages for unpaid work during pay periods without overtime, also known as "gap time", owed to Plaintiff and the North Carolina Class

124. Defendant violated the NCWHA by regularly and repeatedly failing to compensate Plaintiff and the Rule 23 North Carolina Class for the time spent on the work activities described in this Complaint.

125. Consequently, as a result of Defendant's unlawful policies and practices, Plaintiff and the North Carolina Class have been deprived of compensation due and owing.

126. Defendant's failure to pay Plaintiff and the North Carolina Class all owed, earned, and promised wages, despite the fact that, upon information and belief, Defendant knew of its obligations under the law, entitles Plaintiff and the North Carolina Class to liquidated damages in an amount equal to the amount of unpaid wages, under N.C.G.S § 95-25.22 (a1).

127. As a result of Defendant's unlawful acts, Plaintiff and the North Carolina Class have been deprived of all compensation due under the law, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, and attorneys' fees and costs, pursuant to N.C.G.S §§ 95-25.6, 95.25.22(a), (a1), and (d).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Alfred Boyd, on behalf of himself and on behalf of the putative FLSA Collective, requests judgment as follows:

a. Certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth herein;

b. Ordering Defendant to disclose in computer format, or in print if no computer readable format is available, the names, addresses, emails, and telephone numbers of all proposed Collective members, and permitting Plaintiff to send notice of this action to all those individuals, including the publishing of notice in a manner that is reasonably calculated to apprise the Collective members of their rights by law to

join and participate in this lawsuit;

c. Designating Plaintiff as the Representative of the FLSA Collective action, and undersigned counsel as collective counsel for the same;

d. Certifying this action as a class action (for the Rule 23 Nationwide Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiff's common law claims (Counts II and III);

e. Certifying this action as a class action (for the Rule 23 North Carolina Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiff's North Carolina state law claims (Count IV);

f. Declaring Defendant violated the FLSA and the Department of Labor's attendant regulations as cited herein;

g. Declaring Defendant violated the North Carolina wage-and-hour laws and regulations cited herein;

h. Declaring Defendant breached its contracts with Plaintiff and the Rule 23 Nationwide Class by failing to pay Plaintiff and the Rule 23 Nationwide Class for each hour they worked at a pre-established (contractual) hourly rate;

i. Declaring Defendant was unjustly enriched through its failure to pay Plaintiff and the Rule 23 Nationwide Class for the off-the-clock work discussed herein;

j. Declaring Defendant's violations of the FLSA were willful;

k. Granting judgment in favor of Plaintiff and the proposed Collective members as against Defendant and awarding Plaintiff and the proposed Collective members the full amount of damages and liquidated damages available by law;

l. Awarding reasonable attorneys' fees and costs incurred by Plaintiff in filing this action as provided by statute; and

m. Awarding such other and further relief as this Court deems appropriate.

## **JURY DEMAND**

Plaintiff, individually and on behalf of all others similarly situated, by and through his attorneys, hereby demands a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above-entitled cause.

Bruce E. Miller (Fed Bar No. 3393)
BRUCE E. MILLER, P.A.
1459 Stuart Engals Blvd., Suite 202
Mount Pleasant, SC 29464
T: 843.579.7373
F: 843.614.6417
bmiller@brucemillerlaw.com

Kevin J. Stoops (P64371)
(*pro hac vice forthcoming*)
Ethan Goemann (NC Bar No. 50731)
*(pro hac vice forthcoming)*
*/s/*
S2 Counsel
**SOMMERS SCHWARTZ, P.C.**
One Towne Square, 17th Floor
Southfield, Michigan 48076
T: (248) 355-0300
F: (248) 436-8453

*Attorneys for Plaintiff and the Putative FLSA Collective*

MOUNT PLEASANT, SC
February 4, 2026